# Leonard *v.* Roebuck, *et al.*

### Bill for Cancellation of Deed.

(Decided June 13, 1907. 44 South. 390.)

1. *Cancellation of Instruments; Deed; Misrepresentation; Evidence.*—The evidence in this case examined, stated and held sufficient to justify cancellation of the deed on the grounds of misrepresentation as to its contents.

2. *Same.*—Notwithstanding the complainant in this case may have neglected to read the instrument or have it read to her she may avoid the effect of her signature to the deed because of the fraud practiced on her in the procurement of the deed.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Lurena Roebuck against John F. Leonard, for the cancellation of a deed. From a decree for plaintiff defendant appeals. Affirmed.

JOHN VARY, for appellant.—It being shown that complainant could read, write and cipher and that they understood what they were doing, they were not entitled to the relief sought.—*Goetter-Weil & Co. v. Pickett*, 61 Ala. 386.

[Leonard v. Roebuck, et al.]

W. K. TERRY, for appellee.—Where the execution of an instrument is obtained by a misrepresentation of its contents, the party thus signing a paper he did not really intend to sign, it is immaterial that the party had an opportunity to read the paper.—*Beck, et al. v. Houppert,* 108 Ala. 677; *Bank of Guntersville v. Webb,* 108 Ala. 132; *Bryson v. Bridges,* 41 South. 28. Suppressio veri is as good ground for setting aside conveyance as suggestio falsi.—*Torrey v. Buck,* 1 Green. 366.

HARALSON, J.—The bill was filed by Lurena Roebuck against John F. Leonard, and alleges, in substance, that on the 30th day of May, 1906, defendant went out to the house of complainant, and offered to purchase from her 20 acres of land, a part of the 80 acres described in the bill, which complainant owned; that he offered her $35 for this 20 acres, which she agreed to accept; that defendant presented her with a deed to sign, which she thought was for the 20 acres, but which was really a warranty deed to the 80 acres; that he told her she was signing a deed for only 20 acres of the land; that, relying upon the representations of defendant, she signed said deed, thinking it was only for 20 acres, when in fact it was a conveyance of all her interest in the entire 80 acres; that she did not read over said deed, and would not have understood it, if she had read it, but that she relied entirely upon the representations of defendant in the matter; that defendant thus fraudulently induced her to sign said deed, as detailed above; that $35 was a grossly inadequate price, even for 20 acres of said land; that said tract was worth $20 per acre when she executed the deed, and is worth that sum now.

She further avers, that before the commencement of the suit, she offered to pay defendant the sum of $35, and asked him to re-convey the land to her, which he refused

to do; and she offers in the bill to pay him $35 with interest thereon from the day it was paid to her, and offers to do equity as the court may determine.

The prayer of the bill was for a cancellation of said deed, declaring the same to be null and void, and for general relief. A demurrer to the bill was interposed, and overruled.

The answer denies that complainant sold only 20 acres, but alleges that she sold the 80 acres, and denies fraud. It admits that complainant was the real owner of the land, but sets up that a large amount of taxes would have to be paid, to clear the land.

The chancellor, on the evidence introduced, decreed a cancellation of the deed, upon condition that complainant pay to the register for the respondent, within 30 days from the enrollment of the decree, the sum of $35, which was paid by him to her as a consideration for said deed, together with interest from the 30th of May, 1906, the date of said deed, and that each party pay one-half of the costs to be taxed.

The undisputed evidence shows, that complainant was a negro woman about 22 years of age, and was the owner of the 80 acres of land; that she lived in the country, about nine miles from Birmingham, but not on the land in controversy; that the land in controversy was also about nine miles from Birmingham, but not near where appellee was living; that defendant, John F. Leonard, was a white man, a bartender, and real estate dealer, in Birmingham, of large experience in land transactions; that complainant knew nothing of business affairs, and that this was the only transaction she ever had in land; that she did not know anything about land numbers, and did not know how many acres were in a quarter section or anything about it; that complainant and defendant were strangers, and she had never heard of Leonard, the

defendant, before this transaction; that defendant had learned from Dorrity, the man who was in possession of 20 acres of this land, under a tax deed, that the complainant owned the land; that defendant, together with an attorney, drove out in a buggy, nine miles in the country, to where complainant lived, hunted her up and procured her to execute to him a warranty deed to the 80 acres of land in controversy, for a consideration of $35; that at the time of the conveyance Mrs. A. J. Wideman, who was a witness for the complainant in this case, was in possession of 40 acres, J. J. Shultz was in possession of 20 acres, and John Dorrity or Dougherty was in possession of the remaining 20 acres, of the 80 acres of land in question, under tax deeds; that against all of these parties suits in ejectment were pending, by complainant, at the time defendant procured her signature to the deed, and that at the time of the trial of this case she had recovered the 40 acres from Mrs. A. J. Wideman, and the 20 acres from Shultz, and that there only remains to be tried the suit for 20 acres against Dorrity.

The rule of law applicable to a case of this character is, that "when the execution of a written instrument is obtained by misrepresentation of its contents, and a party is induced by such fraud to sign an instrument he did not know he was signing, and which he did not really intend to sign, the party so defrauded can avoid the effect of his signature, because of the fraud practiced upon him, notwithstanding he may have neglected to read the instrument, or to have it read to him."—*Beck v. Houppert,* 104 Ala. 503, 16 South. 522, 53 Am. St. Rep. 77; *Bank of Guntersville v. Webb,* 108 Ala. 137, 19 South. 14; *Tillis v. Austin,* 117 Ala. 262, 22 South. 975.

The evidence is reasonably satisfactory to the effect that $35 was a grossly inadequate price for the 80 acres of land, or even for 20 acres of it, and that the land was

[Leonard v. Roebuck, et al.]

really worth $20 per acre, or $1,600 for the whole tract.

We have, then, an unlettered, ignorant woman, 22 years old, who owned 80 acres of land, who was sought out by a man experienced in affairs, and a real estate dealer, who proposed to buy 20 acres from her for $35, and who, as the evidence shows, procured from her a deed to the entire tract, for that sum. She alleges, and the chancellor was of opinion that the evidence sustained her, that this was done by and as the result of fraud and misrepresentation on defendant's part; that she, signed the deed believing it was for 20, when in fact it was for 80 acres, and of which she was ignorant until she was afterwards informed, when she offered to return the $35, with interest, to the defendant, and requested a reconveyance of the land to her, and he refused to accept the money or to reconvey the land.

The bill avers, as has been seen, that defendant told complainant, that she was signing a paper for only 20 acres of land, and that she relied on said representation. The answer denies that defendant made such representation. The complainant, as the chancellor says in his opinion, testified that it was made, and defendant, in his deposition which was taken after hers, is silent as to whether such representation was made; and he held that the bill was supported by evidence of this material averment, and the answer was not.

We find no error in the decree of the chancellor, and it is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.