[Southern Loan & Trust Co. v. Gissendaner.]

# Southern Loan & Trust Co. v. Gissendaner.

## Assumpsit.

(Decided April 9, 1912.   58 South. 737.)

1. *Corporation; Agents; Liability for Acts.*—Corporations can only act through agents and the acts of the agent is the act of the corporation, if within the scope of the agent's employment.

2. *Building and Loan Association; Acts of Agent; Liability.*—One dealing with the agent of a building and loan association is authorized to rely upon the statement of such agent as to what the association would do if such person purchased stock in said association, and could assume that the agent was acquainted with the terms of the contract with the association which he induced the purchaser to sign.

3. *Same; Third Persons.*—A building and loan association cannot limit the authority of its agent to make representations as to the terms of the contract' with the association if the person contracting with it through the agent was induced not to read the application before signing it by the agent's misrepresentations as to its purpose ' or meaning.

4. *Same; Stock; Rescission; Fraud; Return of Consideration.*—If the association would not have . accepted the stock if tendered it, and would not have returned the money paid for the stock, it was not necessary in order to rescind the contract and recover the amount paid thereon, that the purchaser of the stock should have offered to return it. · The law does not require the doing of useless or unnecessary things.

5. *Contracts; Validity; Fraud.*—While the rule is that a mere unfulfilled promise is not ground for avoiding the contract made upon the faith of such a promise, yet, a contract induced by a promise which the promisor had no intention of performing at the time may be rescinded as for fraud.

5. *Same; Ratification.*—Until the ratifying party has a true knowledge of the facts, a contract induced by misrepresentation cannot be effectually ratified.

7. *Fraud; Evidence.*—A broad range of inquiry is permitted in cases involving fraud.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Assumpsit by Mrs. A. N. Gissendaner against the Southern Loan & Trust Company, for a sum of money

paid on a contract alleged to have been obtained by mis-representations or fraud. Judgment for plaintiff and defendant appeals. Affirmed.

BALL & SAMFORD, for appellant. As to what is actiona-ble fraud see Section 2469, Code. 1907; 8 A. & E. Enc. of Law, 636; 26 Ind. 26; *Bomar v. Rosser,* 131 Ala. 217; *Young v. Arntz,* 86 Ala. 116; *Davis v. Betz,* 66 Ala. 206; 20 Cyc. 20; 19 Wall. 146; *Dunham L. Co. v. Holt.* 123 Ala. 342; 13 Wall. 379. On these authorities it is insist-ed that the court erred as to the several matters assigned.

STAKELY & VARDAMAN, for appellee. There was a mis-representation of fact.—*Prestwood v. Carleton,* 50 Sou. 254; *Hickey v. Morrell,* 55 Am. Rep. 824; 20 Cyc. 17 and 75. At least it was a question for the jury to say whether the misrepresentations were of fact or mere opinion.—*Brown v. Freeman,* 79 Ala. 406; *Tuscaloosa v. Foster,* 31 South. 413; *Foxworth v. Brown,* 21 South. 413. If mere opinion and made deliberately to deceive with the knowledge of its falseness, and it did deceive, then it becomes a statement of fact.—*Wilcox v. Hender-son,* 64 Ala. 535; *Tabor v. Peters,* 74 Ala. 90; *Brown v. Freeman, supra.* The facts show a ratification of the acts of the agent with knowledge of the misrepresenta-tion.—*Williamson v. Tyson,* 17 South. 336; *Gilliland v. Dunn,* 34 South. 25; *Herring v. Skaggs,* 73 Ala. 447.

DE GRAFFENRIED, J.—A corporation can only act by an agent and, when acting through an agent, the agent may be treated as the corporation itself provided the act of the agent is for the corporation and is in the line and scope of his employment.

The appellant is a corporation organized and doing business in the State of Georgia and, it appears from the

evidence, makes loans to parties who purchase its stock. Its stock, it appears, is usually sold upon the installment plan, and no loan can be made upon any of its stock until a certain limited number of installments have been paid upon such stock. We presume that a loan is ordinarily made by it upon a mortgage on real estate, with the stock of the borrower in the corporation pledged as collateral security to the loan.

One Dorsey was the agent of appellant for the State of Alabama, with authority to solicit purchasers for its stock. In and about the business of soliciting purchasers for the stock of appellant it is not denied that Dorsey was, as to the parties with whom he dealt, authorized to bind appellant. The appellee is a married woman residing in Montgomery, and she desired to buy a house and lot in said city known as No. 45 Robinson street, and to that end obtained an option on the lot, which expired on October 1, 1909. The option was obtained some time in August, 1909, and, as she did not have sufficient money to pay for the lot, she applied to Dorsey as the agent of appellant for a loan of $3,000 to be made to her by appellant on a first mortgage on said lot. It appears from the evidence without dispute that Dorsey and Mrs. Gissendaner had known each other from childhood, and that Dorsey expressed to her during the negotiations much affection, saying that he would treat her as a brother, telling her to trust him, and calling her by her Christian name. While the evidence is in sharp dispute as to what really did occur between Mrs. Gissendaner and Dorsey, the evidence shows without dispute that Mrs. Gissendaner was informed by Dorsey that, in order to obtain the loan, she would have to subscribe to a certain number of the shares of stock of appellant, and that to secure the loan she would have to sign an application and pay at the time of signing the application the

sum of $30 and later $300 more. The evidence further shows without dispute that appellee paid the $330, that certain shares of stock of appellant were mailed to her, and that she signed the application. Dorsey claims that appellee read over the application at the time she signed it, but appellee claims that she signed the application in Dorsey's office with no one present except himself, and that at the time she signed the same he stated to her that it was unnecessary for her to read it, that all she had to do was to trust him, and that if she would do so he would see that the loan was made to her by October 1st, and that she did *not* read it.

At the time of the payment of the money above referred to, and at the time it is alleged he made the agreement, Dorsey had not even inspected the house and lot known as No. 45 Robinson street, and had not been furnished with any abstract of title thereto. As he was the agent for appellant in and about the sale of the stock, Mrs. Gissendaner was authorized to rely upon his statements as to what the company would and would not do in the event she purchased the stock, and she had a right to presume that Dorsey was acquainted with the business conditions of the corporation and familiar with the terms of the contract which, according to appellee's testimony, he induced her to sign. Dorsey was the company itself in these negotiations, and, so far as the questions presented by this record are concerned, his representations and statements in *this* action are to be treated as the representations and statements of the company itself, provided appellee accepted them as true.

After the money had been paid, Dorsey confessed to appellee that he did not himself understand the company's contracts. On this subject Dorsey says that he told Mrs. Gissendaner, "So far as knowing the contract, I did not; there were about 1,700 pages of legal law that

pertain to the contract business, and that I was not, and very few lawyers were, competent and qualified to give explanation pertaining to some contracts. I told Mrs. Gissendaner I was going to Atlanta, and, if I could possibly get off, in a couple of weeks; it was somewhere in September, and if I could possibly make an arrangement by which I could secure her money that I would do so. I went to Atlanta and I made every effort that I could in her behalf. It was impossible for the company to secure enough matured contracts that had been reached for a loan to take up her contract."

This latter information was not communicated to Mrs. Gissendaner until after she had made the contracts and paid out the money, and we think that, under all the circumstances of this case, it is plainly inferable that Mrs. Gissendaner would never have entered into any contract with Dorsey if the above information which we have quoted from his testimony had been given to her by him before the contract was made. In other words, if the testimony of appellee is true, the consideration for her subscription to the stock of appellant was the agreement on the part of the appellant's agent that she would get a loan of $3,000 on the lot above described and on the stock to be issued to her before October 1, 1909. While there is evidence in the record from which the jury were authorized to infer that Dorsey, in all that he did and said, was acting in good faith in his negotiations with appellee, nevertheless, giving a fair consideration to all the evidence, there was some evidence from which the jury were authorized to infer that Mrs. Gissendaner was overreached in the transaction, and that, when the agent promised to lend $3,000 on property he had not then inspected, he made that promise, not with the intent of fulfilling the same, but as an inducement to secure a sale of appellant's stock. Dorsey's later admission that he did

not understand the contracts he was selling tended to show that, at the time he sold the stock and promised the loan, he made the statement to deceive appellee into signing the application and paying the money to him as the company's agent, or that the statements were so recklessly made without knowledge on his part as in law to amount to fraud or deceit.—Code, § 4298. The controlling motive for Mrs. Gissendaner to purchase the stock was to secure the loan of $3,000. The controlling motive for Dorsey's promise to make the loan was to secure the sale of the contracts to her. She dealt with him as the agent for the company, and she had a right to rely upon his statements as to his authority to make the loan as promised, and when the company accepted the proceeds of the transaction it was bound, so far as *this action* is concerned, by the terms on which the proceeds had been obtained by its agent.

While the appellant seeks by the terms of the application which the appellee signed, and which was introduced in evidence, to limit Dorsey's authority, we do not think that in this action it should be permitted to do so if it be true that appellee was induced not to read the application before she signed it by reason of the misrepresentations of Dorsey as to its purpose and what it meant.—*Prestwood v. Carlton,* 162 Ala. 332, 334, 50 South. 254; *B. R. L. & B. Co. v. Jordan,* 170 Ala. 536, 537, 54 South. 280; *Leonard v. Roebuck,* 152 Ala. 315, 44 South. 390.

"When the execution of an instrument which the party signing did not intend to sign and did not know he was signing is procured by a misrepresentation of its contents, and the party signing it does so without reading it or having it read, relying upon such misrepresentation and fraud and believing he is signing a different instrument, he can avoid the effect of his signature notwith-

standing he was able to read and had the opportunity to read the instrument."—*Prestwood v. Carlton, supra.*

"One who is negotiating a trade must not recklessly or even innocently assert that as a fact which is untrue, if such asserted fact be to any extent an inducement to the other party to enter into the contract. Honest *belief* in the truth of the statement of such fact, while it exculpates from *moral* fault, does not relieve from the *legal* liability to make it good. It is as much a fraud to affirm as true that which is untrue, though not known to be so, as it is to assert what is untrue and known to be so."—*Prestwood v. Carlton, supra; Jordan v. Pickett,* 78 Ala. 331. In *Nelson v. Shelby Mfg. Co.,* 96 Ala. 532, 11 South. 701, 39 Am. St. Rep.. 116, which was a suit for money had and received, the Supreme Court said : "Evidence of representations or promises or guaranties of enterprises to be carried out in the future were admissible only for the purpose of showing actual fraud, and to have this effect it must appear that the promisor had no intention to perform at the time they were made."

While it is true that a mere unfulfilled promise will not furnish a legal ground for avoiding a contract made upon the faith of the unfilled promise, nevertheless, when a party leads another into a contract by making a promise which he has no intention at the time of performing, such a promise constitutes a fraud, and for such fraud the contract so entered into may be rescinded.—*St. L. & S. F. Ry. Co. v. McCrory,* 2 Ala. App. 531, 56 South. In *Jordan v. Pickett,* 78 Ala. 331, 338, the court said : "It is not indispensable that the misrepresentation or concealment shall be the sole inducement; -it is sufficient if it materially contributes.. and is of such character · that. the purchaser would *not* have consummated the contract had he known the falsity of the statement or the facts suppressed. In

case of an active representation, knowledge of its falsity is not essential. A contract obtained by misrepresentation may be avoided in an action for damages sustained, though the asserting party may not know the statement is false. The law imposes the duty of ascertaining the truth of a statement before making it, and demands, in case of omission, that the representation should be made good."—*Ball v. Farley,* 81 Ala. 292, 1 South. 253. If, therefore, the appellant or its agent did not *know* the loan could be made as stated before the time agreed, it was the duty of the agent of the appellant to have informed himself on that subject before making the statement, which some of the testimony tends to show was made, i. e., that the loan would be made by October 1st.—*Jordan v. Pickett,* 78 Ala. 331, 338; *Ball v. Farley, supra; Henry v. Allen,* 93 Ala. 197 199, 9 South. 579.

Section 2469 of the Code, cited by appellant's counsel, which simply defines *deceit,* concludes with this language: "In all cases of decit, knowledge of a falsehood constitutes an essential element; a fraudulent or reckless representation of facts as true which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."

Section 4298 of the Code, which defines misrepresentation, provides that "misrepresentations of a material fact made willfully to deceive or recklessly without knowledge, and acted on by the opposite party, or if made by *mistake* and *innocently* and acted on by the opposite party, constitute legal fraud."

Section 4299 of the Code provides that "suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes *fraud.* The obligation to communicate may arise from the con-

fidential relations of the parties or from the *particular circumstances* of the case."

In this case there is evidence tending to show that the appellee, when she signed the contract, told Dorsey that unless she could get the loan of $3,000 by October 1st she did not care to enter into negotiations, and that Dorsey replied, among other things, that if she would trust him he would get her the money.

The case before us for decision is not an action for damages for *deceit,* but for *money had and received* by the appellant on account of alleged *misrepresentations* or *fraud* of its agent in the sale of certain of its contracts and which some of the evidence tends to show was seasonably rescinded by the appellee on her discovery of such misrepresentations. The company selected its own agent, accepted the benefits of the transaction, and in this action is bound by his declaration and conduct in the matter of procuring the loan as an inducement for the sale of the stock.

2. When there has been a misrepresentation that induced the making of a contract, there can be no ratification until the party misled has had a true knowledge of the whole facts. One not fully informed of the whole transaction is not in a position to ratify the same.— *Prestwood v. Carlton, supra.*

3. There is nothing in the proposition that the appellee was not entitled to recover because she did not return the stock which was sent to her by the company, which stock constituted merely the evidence of the fact that she was one of its subscribers. There was sufficient evidence in the case for the jury to have ascertained that, if she had offered to return the stock, the appellant would not have accepted it and returned her the money. The law does not require a party to do

such a thing which he knows to be useless.—*S. L. & S. F. Ry. Co. v. McCrory, supra.*

4. Certain exceptions were reserved by the appellant to the admission of certain statements which were made by the agent Dorsey to the appellee pending the negotiations out of which this litigation arose.

The statements referred to formed a part of the res gestae of the transaction to which they referred, and in addition to this it is a well-recognized rule that, whenever a question of fraud arises, the law permits a very broad range to be given to the testimony in the case. Under the issues involved in this case, we are of the opinion that the court was free from error in its ruling upon the testimony.

The judgment of the court below is affirmed.

Affirmed.