# Capital Securities Co. *v.* Gilmer.

## *Assumpsit.*

(Decided November 7, 1914. Rehearing denied December 17, 1914.
67 South. 258.)

1. *Building and Loan Association; Sale of Contract; Fraud.*—
Where one dealing with an agent taking application for home pur-
chasing investment contracts, signed without reading an application
reciting that the applicant relied solely on the terms of the contract,
and the options set forth on the back of the application, and made a
part thereof, and retained the contracts without reading them, and
the agent made no effort to prevent a reading of the application and
of the contract, and made no misrepresentation as to the contents
of the application, such applicant was not entitled to relief on the
ground of fraud, based on statements by the agent as to the contents
of the contract.

2. *Same.*—Where plaintiff alleged that she was induced to apply
for home purchasing investment contracts, and led to pay money
thereon by fraudulent representation of an agent of the company,
and that on discovery of the fraud she seasonably elected to end the
contract and demanded a recovery of the money paid, all the issues
raised thereby could be presented by the plea of the general issue.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Assumpsit by Mrs. H. T. Gilmer against the Capital
Securties Company. From a judgment for plaintiff, de-
fendant appeals. Transferred from Court of Appeals.
Reversed and remanded.

The action was on the common counts. There was
quite a number of pleas filed which are not deemed
necessary to be here set out, as is indicated by the opin-
ion. The controversy was over certain sums paid to de-
fendant by plaintiff under a home purchasing invest-
ment contract. It appears from the pleading and the
evidence that plaintiff made and signed a written appli-
cation for said contract, and that said written applica-
tion contained the following provision:

"I make this application expressly and solely upon the terms and conditions of said contract, and the option, provision and requirements set forth on the back of and made a part thereof, and not upon the faith of any statement, undertaking or guaranty on the part of said solicitor or any other person."

Plaintiff set up that she was induced to enter into the contract upon a statement of such facts, and under such circumstances as to constitute a fraud at law, in that defendant's agent, one Phillips, while acting within the line and scope of his authority, came to plaintiff and stated that he was selling a certain contract for defendant known as the "home purchasing investment contract." The said Phillips falsely and fraudulently represented, and with the intent to deceive stated, to plaintiff, that said contract contained a provision by the terms of which plaintiff would obtain a loan of $1,000 at the end of six months, provided plaintiff paid defendant at the rate of $6 per month for a period of six months, and that not having read said contract or having same read to her, but relying on the statement of its contents as aforesaid, agreed to purchase six of the aforesaid contracts and signed a paper falsely and fraudulently with intent to deceive represented to her to be an application for the contracts as represented to her, relying on the aforesaid statement as to its contents, and that shortly thereafter six contracts were delivered to plaintiff by defendant which plaintiff retained without reading, relying on the statement of their contents as aforesaid, and made and continued to make her payments as agreed, and defendant failed to make said loan on defendant's demand for same at the expiration of six months, and that plaintiff was told by Phillips while acting within the line and scope of his authority,

or within the apparent scope of his authority, falsely and fraudulently, with intent to deceive, that under said contracts plaintiff would get her loan if plaintiff would only make two additional payments of $6 on each contract, and relying on said promise, and without reading said contracts, plaintiff made the additional payments, etc.

The application contains the following: I have to-day paid R. A. Phillips, a solicitor whose authority I understand extends only to the sale of home purchasing investment contracts, issued by the company under their printed terms and conditions. * * * I have examined the terms of your company and have read, and am familiar with, all the terms and conditions of its home purchasing investment contract, and also with all the options, provisions and requirements set forth on the back thereof, and made a part of said contract, and I agree to abide thereby, * * * and I make this application expressly and solely upon the terms and conditions of said contract, and the options, provisions and requirements set forth on the back, and made a part thereof, and not upon the face of any statement, promise, undertaking or guaranty upon the part of said solicitor or any other person.

EDWARD S. WATTS, for appellant.

WEIL, STAKELY & VARDAMAN, and WALTER S. RICHARDSON, for appellee.

DE GRAFFENRIED, J.—This is an action upon the common counts and, in some of its aspects, is similar to the cases of *Southern Loan & Trust Co. v. Gissendaner,* 4 Ala. App. 523, 58 South. 737, and *Capital Securities Co. v. Holland,* 6 Ala. App. 197, 60 South. 495,

The pleadings in this case we think meet the defects which were pointed out by the Court of Appeals in *Capital Securities Co. v. Holland, supra.*

1. In this case there is one material element lacking which was pointed out in the *Gissendaner Case, supra.* In the *Gissendaner Case* the agent of the defendant had been, in childhood, a playmate and schoolmate of Mrs. Gissendaner. They had been friends all of their lives and called each other by Christian name. This agent— there is some evidence tending to show—took advantage of the intimate personal relations which thus existed between him and Mrs. Gissendaner so as to lead her into the belief that he wanted to aid her in buying a home, and under that fraudulent assumption, induced her to sign an application, telling her that it was unnecessary for her to read the application, "that all she had to do was to trust him, and that if she would do so he would see that the loan was made to her by October first." The agent in that case, there was evidence tending to show, took advantage of a relation which years of friendship and intimate association had established between him and Mrs. Gissendaner, to lead her, on behalf of his company, without reading the application, into a contract with his company, by making with her, on behalf of his company, for a fraudulent purpose, a contract which, when it was made, there was no intention to fulfill, and but for which fraudulent agreement Mrs. Gissendaner would not have made the contract.

(1) In this case there was no such relation existing between the plaintiff and the agent of the defendant as existed between Mrs. Gissendaner and the agent with whom she dealt, and there was no legal excuse for the plaintiff in this case to have been lulled into such ab-

solute feeling of repose and trust as some of the evidence in the *Gissendaner Case* tended to show existed in the plaintiff in that case. If the evidence of the plaintiff is to be believed, she might not have applied for these contracts but for the fact that she regarded the agent with whom she dealt as a trustworthy man, and it may be that she would not have signed the application if the agent had not stated to her that if she signed the application the contracts which would come to her from his company would contain certain stipulations as to a loan, etc. There was, however, no effort on the part of this agent to prevent the plaintiff from reading the application. The application, the plaintiff must have known, was to be forwarded by the agent of his company, and that upon its faith the company would, if the application was satisfactory, issue the contracts.

Under all the evidence in this case, it was the duty of the plaintiff, in the exercise of business precaution, to have read her application. She was dealing with an agent who was authorized to take applications for contracts—not to sell contacts—and just above the plaintiff's signature to the application in this record there is this significant provision:

"I make this application expressly and solely upon the terms and conditions of said contract and the option, provisions and requirement set forth on the back and made a part hereof, and not upon the faith of any statement, promise, undertaking or guaranty on the part of said solicitor or any other person."

Under the evidence in this case there is no legally sufficient reason shown by the plaintiff for her failure to read her application, and we see no reason why, under the evidence in this case, she should be permitted, upon the ground of fraud, to defeat the defendant's re-

[Capital Securities Co. v. Gilmer.]

covery. In this case, as already stated, there was no effort on the part of the agent to prevent the plaintiff from reading the application, and there was no misrepresentation as to what the application contained. The best that can be said for the plaintiff is that there is evidence tending to show that there was a statement by the agent as to what the contract, if issued by the company, would contain. The application, if the plaintiff had exercised the ordinary business precaution to read it before signing it, would have shown her that this statement of the agent in no way bound the company.—*Prestwood v. Carlton,* 162 Ala. 327, 50 South. 254.

Under the evidence in this case, defendant was entitled to affirmative instructions in its favor.—*Dunham Lumber Co. v. Holt,* 123 Ala. 336, 26 South. 663. Under the law, as applied to the evidence in this case, the plaintiff is charged with knowledge of the contents of her application, and the application shows that the defendant was not bound by any statement or representation of its solicitor.

(2) 2. There was, in this case, much pleading. The proposition of the plaintiff is that she was, by fraudulent representations of an agent of the defendant, who induced her to apply for certain contracts, led to pay the defendant certain sums of money, and that she, upon the discovery of the fraud, seasonably elected to put an end to her agreement and that she is, ex æquo et bono, entitled to recover of the defendant the money so paid. The entire matter of controversy in this case, therefore, was presented by the plea of the general issue.

Reversed and remanded. All the Justices concur.