(76 South. 313)
HEIDE v. CAPITAL SECURITIES CO.
(6 Div. 549.)

(Supreme Court of Alabama. June 28, 1917.)

1. CORPORATIONS ⊜71—ISSUANCE OF STOCK —POWERS OF CORPORATIONS — RIGHTS OF STOCKHOLDERS.
In view of Code 1907, § 3479, providing that preferred stock in no case exceeding two-thirds of the capital stock paid in money may be issued, where a corporation with authorized capital stock of $2,000 in equal parts of common and preferred stock, of which only $1,000 was paid in, issued on the same day succeeding incorporation on a mere formal increase of stock preferred stock of $100,000, the issue was unauthorized and void.
[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 447.]

2. CORPORATIONS ⊜100—ISSUANCE OF STOCK — POWERS OF CORPORATIONS — RIGHTS OF STOCKHOLDERS.
Where the issuance of preferred stock was in direct violation of Code 1907, § 3479, stock obtained by a purchaser is void, confers no rights, and subjects him to no liabilities.
[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 450, 451.]

3. CORPORATIONS ⊜106—UNAUTHORIZED ISSUANCE OF STOCK—RIGHTS OF STOCKHOLDERS.
In such case the right of the purchaser of the stock to recover the amount paid cannot be denied on the theory that the contract, though ultra vires, was executed, since the corporation agreed to sell shares of stock, and in fact sold nothing because the shares were void.
[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 456–458.]

4. CORPORATIONS ⊜106 — UNAUTHORIZED STOCK—RIGHTS OF STOCKHOLDERS.
An issue of preferred stock which was void under Code 1907, § 3479, may be attacked by the purchaser of the stock as well as by the state or the common stockholders.
[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 456–458.]

5. CORPORATIONS ⊜106—ISSUANCE OF STOCK —SURRENDER—RIGHTS OF STOCKHOLDERS.
Where the purchaser of stock, the issuance of which was void, had received two semiannual dividends and offered to surrender his certificate and demanded a return of his money, his mere failure specifically to announce that the dividends would be returned could not defeat action.
[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 456–458.]

Anderson, C. J., and McClellan and Sayre, JJ., dissenting.

Appeal from City Court of Birmingham; H. A. Sharpe, Judge.

Action by S. S. Heide against the Capital Securities Company. Transferred from the Court of Appeals under section 6, Acts 1911, p. 449. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Appellant, plaintiff in the court below, brought this suit against the appellee to recover $500, which he had paid to the defendant by way of purchase of 5 shares of preferred stock of the par value of $100 in said company. The cause was tried upon an agreed statement of facts. The first six counts were the common counts for money had and received, money loaned, and money due by account, etc. The sixth count was for money had and received. Demurrers were sustained to counts 7 and 8, which more specifically set up the facts, and to count 8 as amended demurrer was also sustained. The cause then proceeded to trial upon the common counts, being tried before the court without a jury, upon the agreed statement of facts, in substance, as follows:

The Averyt Drug Company was organized as a corporation under chapter 69 of the Code of 1907, on May 22, 1913, and the certificate of incorporation is made Exhibit A to the agreed statement of facts. This exhibit, in substance, shows that it was the purpose of the incorporation to lease, sell, own, and operate a chain or system of drug stores in Birmingham, or in any other city in Alabama, or elsewhere; also to organize or conduct any business for the manufacture or storage or sale of drugs, merchandise, soft drinks, etc.; also the power to own and deal in real estate, and to purchase, hold, reissue, or sell its own stock, as well as stock of other concerns; its principal office to be located in Birmingham; the authorized capital stock was $2,000, divided into 20 shares of the par value of $100 each, of which 10 shares of the total par value of $1,000 is common stock and 10 shares of the total par value of $1,000 is preferred stock. Then follow provisions as to the right of

preference in the distribution of dividends given to preferred stockholders, which need not be set out.

The certificate also provided that both classes of the capital stock may, from time to time, be increased, according to law, and further discloses that the amount of paid-up capital stock with which the corporation began business is $1,000, and names of the original stockholders, with the number of shares subscribed by each, is set out. The certificate of incorporation also stated as follows:

"The company shall have the right to increase its capital stock to any amount desired and to divide the same into such classes as may be desired, and any report filed with the judge of probate and certified by the officers of the company, as provided by statute, setting forth the consent in writing of the holders of all of such capital stock, shall be and constitute full, regular and complete authority for the issuance of such increase of stock, as defined by such certificate, without any other meeting, call or waiver; but this provision shall not be construed to limit the power of the company to increase or decrease its capital stock in the manner now or hereafter provided by law."

The report of the incorporation, Exhibit B, shows that the same was duly filed in the office of secretary of state May 23, 1913, and shows the amount of the capital stock authorized to be $2,000, and the amount actually paid in $1,000. The capital stock of the company was increased on May 23, 1913, under the provisions of section 3462, Code 1907, as set out in the certificate of increase of capital stock, which is made Exhibit C, and which shows that at a special meeting of the board of directors on May 22, 1913, subsequently ratified by a meeting of the stockholders the following day, May 23, 1913, the capital stock of the Averyt Drug Company was increased as follows: The common capital stock increased from $1,000 par value to a total of $50,000 par value, and the preferred capital stock from $1,000 par value to a total of $100,000 par value, which certificate was duly filed in the office of the probate judge of Jefferson county. The agreed statement of facts further shows that the stock of the company was issued as follows:

"On May 22, 1913, at the time the company was organized, 10 shares of common stock was subscribed and paid for and issued. Afterwards, on, to wit, June 1, 1913, and thereafterwards, 937.5 shares of preferred stock were issued as follows:

| | |
|---|---|
| Paid for in cash.................. | shares |
| Paid for in property.............. | shares |
| Paid for in promotion of company...89 | shares |

Total.....937.5 shares preferred stock."

At the time, and as the preferred stock was issued, there was issued with it, without further consideration, 1 share of common with each 2 shares of preferred, making common stock issued, 487.5 shares.

The name of the corporation was, on September 13, 1915, changed to that of the Capital Securities Company, in all respects as provided by statute, the report of which was duly filed in the office of the secretary of state. On June 27, 1913, plaintiff bought from the Averyt Drug Company 5 shares of the preferred stock of the par value of $100 each, and paid said company the sum of $500 in the following payments: July 1, 1913, $125; October 1, 1913, $75; January 2, 1914, $75; January 10, 1914, $225—for all of which sums, except the first payment, he had executed his notes. The books of the company remained open for inspection while said notes were unpaid, but were not inspected by plaintiff. The agreed statement of facts concludes as follows:

"That thereupon said Averyt Drug Company delivered to plaintiff what purported to be certificate P 15, for 5 shares of its preferred stock, as shown by said certificate hereto attached marked 'Exhibit F,' and made a part hereof, which said certificate of preferred stock was issued and was a part of the preferred stock as provided in Exhibit C, hereto set out. That on, to wit, December 18, 1915, plaintiff became of the opinion that said preferred stock was void and of no value, and that he thereupon tendered same to defendant, and demanded the return and repayment of his money, but said defendant refused to do so, and plaintiff brings this suit for same. That said Averyt Drug Company paid two dividends of 4 per cent. each, on, to wit, August 21, 1914, and, to wit, February 16, 1914, and that the plaintiff received each of same at or about said dates."

Upon consideration of the evidence as disclosed by the agreed statement of facts, the court found in favor of defendant, and from this judgment plaintiff prosecutes this appeal.

Sterling A. Wood, of Birmingham, for appellant. Beddow & Oberdorfer and C. C. Nesmith, all of Birmingham, for appellee.

GARDNER, J. The Averyt Drug Company was organized as a domestic corporation with an authorized capital stock of $2,000, $1,000 of which was paid in cash. Subsequently the name of the corporation was changed to the Capital Securities Company, appellee here, and as each name refers to the same corporation, no distinction need be made in the discussion here, but the corporation will be referred to as the defendant.

Immediately after the incorporation of defendant, that is, on the same day of its incorporation, at a special meeting of the board of directors, which on the following day was ratified at a special meeting of the stockholders, the capital stock of defendant company was increased as follows: The common capital stock was increased from $1,000 par value to a total of $50,000 par value, and the preferred stock increased from $1,000 par value to a total of $100,000. As disclosed by the statement of the case the original stock was divided into common and preferred stock, 10 shares each of the par value of $100. On June 1, 1913, and thereafterwards, 937.5 shares of preferred stock were issued as follows:

Paid for in cash.................... shares
Paid for in property................ shares
Paid for in promotion of company....89 shares
——————
Total ........937.5 shares preferred stock.

And with every 2 shares of preferred stock there was issued 1 share of common stock without further consideration, making common stock issued 487.5 shares. On June 27, 1913, plaintiff bought from defendant company 5 shares of preferred stock of the par value of $100 each, for which he paid the said sum of $500 in installments as disclosed in the foregoing statement of the case, for which there was delivered to plaintiff what purported to be a certificate for 5 shares of its preferred stock, which said certificate was issued, and was a part of the preferred stock issued, as previously shown. In December, 1915, plaintiff became of the opinion that the stock which he had was void and of no value, and thereupon tendered the same to defendant, demanding a return of his money, which defendant refused to do, and hence this suit.

"The cases are unanimous in holding that a corporation has no power to increase or diminish its capital stock unless expressly authorized to do so. No such power can be claimed by implication." 7 R. C. L. p. 202.

This principle was recognized in the case of Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, where, speaking to this question, the court said:

"And it is well settled that a corporation has no implied power to change the amount of its capital as prescribed in its charter and that all attempts to do so are void. Mechanics' Bank v. New York & New Haven Railroad Co., 13 N. Y. 599; New York & New Haven Railroad Co. v. Schuyler, 34 N. Y. 30; Railway Co. v. Allerton, 18 Wall. 233 [21 L. Ed. 902]; Stace & Worth's Case, Law Rep. 4 Ch. App. 682, note. In this case the attempt to increase the stock of the company beyond the limit fixed by its charter was ultra vires. The increased stock itself was therefore void. It conferred on the holders no rights and subjected them to no liabilities. If the stock of the first and second issues had been held by one set of holders, and the stock of the third and fourth by another, in a contest between them the latter would have been excluded from all participation in the management of the company or in its profits. To decide that the holders of stock issued ultra vires have the same rights as the holders of authorized stock is to ignore and override the limitations and prohibitions of the charter. We think it follows that if the holder of such spurious stock has none of the rights, he can be subjected to none of the liabilities of a holder of genuine stock. His contract to pay for spurious shares is without consideration and cannot be enforced."

Our own court in Grangers' Life & Health Ins. Co. v. Kamper, 73 Ala. 325, recognized and gave force to the same principle, and in discussion of the question used the following language:

"The case, in this aspect, resolves itself into the simple inquiry whether the company had the implied power to take subscriptions for stock, after the capital stock, as expressed in the declaration of incorporation, had been subscribed for and taken; in other words, had it the power at its own option to enlarge the amount of its capital stock and the number of its shares? * * * The implied or the incidental powers corporations may rightfully exercise never have been extended to changes in the Constitution or membership of the corporate body, or changes of the purposes for which the corporation was created. They have been confined to such powers as would enable the corporation to exercise properly its express powers. Changes of the capital stock of corporations of this character involve changes in organization, and a displacement of the power and influence the original stockholders, or their legitimate successors are of right entitled to exercise in the election of officers, and in the general management of the corporate affairs and business. That corporations have not an implied power to effect such change, that it can be effected only by legislative sanction, seems to be settled. * * * A subscription for the stock of a company is a contract, and, like other contracts, must be supported by a consideration. The consideration upon which it rests is the right secured by it of membership in the corporation, and the interests accruing from membership. When these are not secured, and cannot legally result from the subscription, it is wanting in consideration, as are notes or other obligations which may be given for its payment."

[1] Section 3479, Code 1907, provides for the issuance of preferred stock, and contains the following inhibition:

"Thereafter preferred stock in no case exceeding two-thirds of the capital stock paid for in cash or property may be issued."

The authorized capital stock of this corporation was $2,000, of which sum only $1,000 represented money or property. If the above-quoted clause be given application here, it would clearly appear that the issuance of $100,000 of preferred stock was wholly unauthorized. Preferred stock being authorized by the statute is presumed to have some solid foundation upon which to rest as for an investment with a fixed income. It is something more than simply the capital stock of the company, and in order to insure as nearly as may be this foundation for the issuance of preferred stock, the Legislature has provided that the same shall not be issued in any sum exceeding two-thirds of the capital stock paid for in cash or property. We are of the opinion the issuance of preferred stock in this case comes well within the inhibitory clause of the above-cited statute. The agreed statement of facts disclosed that in property or money there has never been paid in as its capital stock for this company exceeding $1,000, and to hold that the company could, on the same day, by a mere formal increase of its capital stock, without more, legally authorize the issuance of $100,000 preferred stock, which had, for its basis, only $1,000 in cash, would be to permit a flagrant violation of the above-quoted wise prohibitory clause of the statute.

[2] As the issuance of this stock was thus not authorized by law, but on the other hand in violation thereof, then under the authority of Grangers' L. & H. I. Co. v. Kamper, and Scovill v. Thayer, supra, the stock obtained by plaintiff was void, conferring no rights, and subjecting him to no liabilities. The con-

sideration upon which plaintiff paid his $500 was the supposed right by him of membership in the corporation, and the interest accruing from such membership.

The Supreme Court of Louisiana in discussing a somewhat similar question in the case of Lincoln v. N. O. Exp. Co., 45 La. Ann. 729, 12 South. 937, said:

"The defendant, therefore, had no stock to sell; the certificate which purported to represent the delivery of stock was a worthless piece of paper; plaintiff received nothing for his money, and is entitled to recover it."

We note the quotation as here pertinent, without intending to indicate either approval or disapproval of the conclusion of that case, leaving that feature without comment. See, also, Amer. Tube-Wks. v. Boston Mach. Co., 139 Mass. 5, 29 N. E. 63; Dill v. Inhabitants of Wareham, 7 Metc. (Mass.) 438.

There being, therefore, no consideration for the $500 paid by plaintiff to defendant, the same may be recovered by him in an action on the common count for money had and received. Nelson v. Shelby Mfg. Co., 96 Ala. 515, 11 South. 695, 38 Am. St. Rep. 116; Steiner Bros. v. Clisby, 103 Ala. 181, 15 South. 612; Farmers' B. & T. Co. v. Shut & Keihn, 192 Ala. 53, 68 South. 363; Deming v. Lee, 174 Ala. 410, 56 South. 921; Southern L. & T. Co. v. Gissendaner, 4 Ala. App. 523, 58 South. 737.

[3] It therefore becomes unnecessary to deal with the question of the sufficiency of counts 7 and 8 as amended, to which demurrers were sustained. Counsel for appellee do not, in their brief, defend the issuance of this preferred stock, leaving that phase of the case without comment, but they insist that plaintiff is seeking to recover because of an ultra vires contract on the part of the corporation which has been fully executed, citing Long v. Ga. Pac. R. R. Co., 91 Ala. 519, 8 South. 706, 24 Am. St. Rep. 931. That case, however, and those of that character, are not analogous to the case here under review. Those are cases where whatever was contracted to be done on either hand has been done, while in the instant case, plaintiff contracted for the purchase of 5 shares of preferred stock in the defendant company, and received therefor a certificate purporting to represent the same, but which in truth and in fact was but a piece of paper conferring upon him no rights whatever, and of no value. He therefore received nothing for his $500, and the principles recognized in Long v. Ga. Pac. R. R. Co., supra, are not at all in conflict with the conclusion here reached.

[4] It is also insisted that plaintiff was not in a position to attack the issuance of the preferred stock, and that this could only be done either by the state or the common stockholders, and that, further, an inspection of the books by plaintiff would have disclosed the situation some time prior to its discovery. In Scovill v. Thayer, supra, the distinction is pointed out between stock which was authorized to be issued, but the issuance of which was irregular, and stock which was issued without authority of law therefor, and in discussing the question somewhat analogous to the argument here presented, the court said:

"It is true that it has been held by this court that a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create. Upton v. Tribilcock, 91 U. S. 45 [23 L. Ed. 203]; Chubb v. Upton, 95 U. S. 665 [24 L. Ed. 523]; Pullman v. Upton, 96 U. S. 328 [24 L. Ed. 818]. But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant. But here, the corporation being absolutely without power to increase its stock above a certain limit, the acquiescence of the shareholder can neither give it validity, nor bind him or the corporation. 'A distinction must be made between shares which the company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which, they have been issued. The holders of shares which the company has no power to issue, in truth had nothing at all, and are not contributors.' 2 Lindley, Partnership, 138. And see Lathrop v. Kneeland, 46 Barb. (N. Y.) 432; Mackley's Case, 1 Ch. D. 247."

[5] The plaintiff offered to surrender his certificate, and demanded a return of his money, which was refused. The agreed statement of facts discloses that defendant company had paid two dividends of 4 per cent. each, which plaintiff had received, and it is insisted that he made no specific offer to also return these dividends, amounting to the total sum of $40. The dividends were, of course, to be offset against the amount due the plaintiff in case defendant had entertained plaintiff's demand, and we think it too clear for discussion that a failure to make a clear announcement of that simple fact could have no material bearing upon the plaintiff's right of action. The evidence fully justifies the conclusion that such an offer would have been futile and an unnecessary ceremony. Rabitte v. A. G. S. Ry. Co., 158 Ala. 431, 47 South. 573; Hafer v. Cole, 176 Ala. 242, 57 South. 757; So. L. Co. v. Gissendaner, 4 Ala. App. 523, 58 South. 737; Rice v. Gilbreath, 119 Ala. 424, 24 South. 421; Bishop on Contracts, § 679.

We therefore conclude that the court below was in error in rendering judgment for the defendant. The cause having been tried upon the agreed statement of facts, the judgment of the court below will be reversed, and one here rendered for the plaintiff for the sum sued for, with interest thereon, less the $40, which will be duly credited as of date of receipt of same.

Reversed and rendered.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., dissent.