# Farmers' Bank & Trust Co. *v.* Shut & Keihn.

## *Assumpsit.*

(Decided April 8, 1916.  68 South. 363.)

1. *Money Had and Received; Action; Nature.*—An action for money had and received is in its nature equitable, and is maintainable whenever one person has money or other things of value, which ex aequo et bono belongs to another.

2. *Same; Things Covered.*—To maintain an action for money had and received, it is not necessary that actual money shall have been received; if property or anything be received as the equivalent of money by a person who assumes to cancel or dispose of a property

right for which it is his duty to account to another, by contract or legal or equitable liability, the latter may treat the transaction as a receipt of money, and bring an action for it as such.

3. *Same; Privity of Contract.*—Privity of contract is not necessary to support an action for money had and received; the only privity that must be shown is that arising from a promise implied by law, that one having money in his hand that rightfully belongs to another, will pay it to him.

4. *Principal and Agent; Knowledge of Agent; Notice to Principal.* —Where a defendant advanced money for the purchase of standing timber and took the purchaser's note, secured by a mortgage on the timber, on an agreement that such purchaser should cut and deliver the timber and receive a certain credit on the note, and a draft for the excess, the knowledge of defendant's agent, who was authorized to draw the draft, that the purchaser was going to discount it with a bank, to secure money with which to pay off his employees, was knowledge and notice to defendant.

5. *Banks and Banking; Draft; Set-Off; Waiver.*—Where a defendant advanced money to purchase standing timber with an agreement that the purchaser would cut and deliver it, and that he should be allowed a certain amount per M. feet, which on each shipment, should be credited on his demand note, and a draft given for the balance, and with full knowledge of these facts, gave the purchaser a draft to be discounted with the plaintiff bank to secure money with which to pay off the purchaser's laborers, and accepted the logs called for in the bill of lading, which was delivered to the bank with the draft, and also logs substituted for the numbered logs mentioned in the bill of lading, it thereby waived its right to set off a demand against the bank in excess of the draft on the ground that the note of the purchaser had been matured by demand for payment.

6. *Estoppel; Loss; Innocent Person.*—Where one of two innocent persons must suffer because of the act of some third person, he who has enabled such third person to occasion the loss, must sustain the loss.

7. *Money Had and Received.*—Where defendant advanced money to a purchaser of timber land and took his demand note secured by a mortgage on the timber with the agreement that on delivery of logs by the purchaser, he would be allowed a certain credit per M. feet on the note and that the excess would be paid by draft, and such defendant issued a draft to the purchaser with the knowledge that it would be discounted to obtain money to pay defendant's employees, and plaintiff bank discounted the draft, which was accompanied by a bill of lading to the defendant, and the defendant received and disposed of the consignment of logs, the discounting bank could sustain an action against the defendant for money had and received on the ground that defendant had in its hands, money which in equity and good conscience belonged to the bank.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by the Farmers' Bank & Trust Company against Shut & Keihn. Judgment for defendant, and

plaintiff appeals. Reversed, and judgment rendered for plaintiff.

The following is the draft drawn by Schaffer directed by the court to be set out:

$1319 72/xx                      Scuilpa, Ala., 12/20, 1912.

At sight, with B/L attached for 236 poplar logs branded (S & K), pay. to the order of J. W. Lee thirteen hundred and nineteen 72/xx dollars.

No. 2229 to 2464

To Shut & Keihn, Inc.

    1018 Hennen Bldg.

      New Orleans, La.

              [Signed]    E. D. Schafer.

Indorsed by J. W. Lee.

ERVIN & McALEER, for appellant.

GREGORY L. & H. T. SMITH, for appellee.

GARDNER, J.—Suit by appellant against appellee. The complaint, as originally framed, contained three counts seeking recovery upon a bill of exchange, and was amended by adding common counts for money had and received and open account.

It seemed to be conceded by counsel in briefs that the material facts of the case are without substantial conflict. The record, we think clearly establishes the following: On or about September 4, 1912, defendant advanced for one J. W. Lee the purchase money, to wit, $2,974.43, for certain standing timber, took Lee's note for said sum, payable to the defendant's order on demand, which note was secured by a mortgage of the purchased timber. At the same time it was agreed that Lee should cut, sell and deliver to defendant, Shut & Keihn, the said timber so purchased at named prices,

and that said defendant could credit upon Lee's note $4 per thousand feet, the credits to be made as each lot of logs was shipped, and would pay the balance of the agreed price in cash to Lee, giving him a draft therefor. The defendant was to have the timber or logs inspected. One E. D. Shafer (who drew the draft, the subject-matter of this suit) was the inspector for defendant and was by defendant authorized to draw drafts for all logs inspected by him, and it is insisted by defendant that each draft so drawn was to cover the particular logs which he, from time to time, inspected. Under such agreement Lee proceeded to cut the timber and ship same to defendant. The first shipment credit was duly given as per above statement of the agreement and draft given as above stated to Lee, for the balance, which draft was cashed by the plaintiff, Farmers' Bank & Trust Copmany, and which draft, as testified to by one J. W. Tucker, president of the said bank, had bills of lading for logs attached thereto.

Out of the second shipment of logs arises this suit, and the facts as clearly established in reference thereto are as follows: It was December 20, 1912. Lee and Shafer were at the place where the timber was being cut and where the logs were inspected by Shafer. As it was so near the holiday season, Lee wanted to pay his men off at that time and requested Shafer to make out a draft then, so he could then send it to plaintiff bank and get the money on it to pay the men off, rather than have to wait until Shafer went to the office to do so. This Shafer did, making out the draft as shown in the report of the case, which represented the balance due to Lee out of the 236 inspected logs after the credit of $4 per thousand feet was given on Lee's note. Shafer gave the draft then for the purpose of assisting Lee in getting the money at that time to pay off his

men. Lee made out his note payable to plaintiff bank and attached the draft thereto in the presence of Shafer and mailed same to said bank, with knowledge on the part of Shafer that the proceeds of that draft, which was to be cashed by plaintiff bank, were for the purpose of paying off the men. Bills of lading were not attached to the draft for the reason that the logs had not then been loaded and shipped. The draft was indorsed by Lee and delivered with his note to plaintiff bank and the amount thereof paid to Lee by the said bank. Subsequently Lee delivered to the bank bills of lading for popular logs in excess of 236, as named in the draft, defendant being named in each as consignee, whereupon the bank returned to Lee his note and forwarded his draft with bills of lading attached to defendant and payment was refused. The body of the draft reads, "At sight, with B/L attached for 236 poplar logs branded (S & K), pay to the order of J. W. Lee," and in the corner thereof and to one side is found "No. 2229 to 2464," which represent, it is insisted, the numbers on said 236 poplar logs. The bills of lading attached to the draft, the subject of this suit, called for largely more than 236 poplar logs, but the entire 236 logs with the number from 2229 to 2464 were not embraced therein, but a large portion of said numbered logs were contained in said bill of lading, and for those not so numbered were substituted other poplar logs of equal dimension and of equal quality. The logs embraced in said bills of lading were by the defendant received and accepted, and by the defendant sold or otherwise disposed of.

It is insisted by counsel for appellee that the draft not being payable unconditionally, but only upon condition that the bill of lading for the logs be attached thereto, was not negotiable, and further that the num-

bers in the corner of the draft were sufficient to put plaintiff on notice that it was only payable upon condition that bill of lading be attached calling for logs with those numbers, and that therefore in no event could plaintiff be held to be an innocent purchaser of the draft and protected as such.

From the view we take of this case, this insistence is without influence upon the result reached, as the decision of the case does not rest upon any theory of innocent purchaser of negotiable paper.

It is next urged, in support of the judgment rendered in favor of appellee, that, before defendant had any notice of a transfer of said draft, it made demand on Lee for balance due on his note secured as previously stated herein, and such balance was unpaid and a part thereof still remains so, and that therefore the same may be set off against this claim. This is the question of greatest importance in the case, as we view it.

In the case of *Archer v. People's Savings Bank,* 88 Ala. 253, 7 South. 53, the president of the bank was largely indebted to it, and while so indebted was elected to such position at an agreed salary, payable monthly, in advance; but there was no contract between him and the bank as to whether said salary would be subject to such indebtedness, and no effort was made by the bank to so apply the salary. A judgment creditor of the president garnished the bank, and in its answer the indebtedness of the president to it was set up as a matter of defense by way of set-off as against the salary claimed by the garnishing creditor to be subject to the judgment. It was held that the salary was paid by the bank without any consideration of the set-off, and that the contract showed there was an implied

agreement not to claim it, and that such was no defense as against said judgment creditor.

In the instant case, the agreement between the defendant and Lee provided for a credit on each shipment of $4 per thousand feet on Lee's indebtedness. The price of the logs, which Lee was thus selling to defendant, was fixed by their contract, and the defendant was to give Lee a draft for the difference—to pay Lee the difference in money. In the first shipment this was done and plaintiff bank cashed the draft, which also had attached the bills of lading for logs sold by Lee to defendant under said agreement.

In the *Archer Case, supra,* it is stated in the opinion that doubtless the motive that induced the payment of the salary in advance may have been the implied need of the money for the maintenance of the debtor.

There is much room for the same character of argument, under the agreement herein shown, to the effect that the parties contemplated such payment to Lee in view of the evident need of the money by him in getting out the timber he was selling defendant, and thereby impliedly agreed that such cash sum should not be subject to be set off by balance due on his note. The note was due upon demand, and to construe the contract otherwise might place in the power of the defendant, by a demand for payment, to pay no more money to Lee at all and in fact defeat the very purpose of the contract itself. What is here said, however, as to the result of such construction of such contract as between Lee and this defendant, is merely argumentative only, for the suit is not between the original parties to the contract, and we are convinced as against this plaintiff the defendant is not in a position to set off Lee's indebtedness in defeat of this suit.

(1-3) The complaint, as previously stated, contains a count for money had and received. "A suit for money had and received is in the nature of an equitable action, and is maintainable whenever one person has money which ex æquo et bono belongs to another; * * * and it is not always necessary that actual money shall have been received. If property, or anything else, be received as the equivalent of money, by one who assumes to cancel or dispose of a property right, for which, by contract, or liability, legal or equitable, it is his duty to account to another, the latter may treat the transaction as a receipt of money, and sue for it as such."—*Barnett v. Warren & Co.*, 82 Ala. 557, 2 South. 457.

"An action for money had and received is appropriate, whenever the defendant has money in his possession, which belongs of right to the plaintiff. Privity of contract is not necessary to support the count. Chamberlain & Co. having received money for the purpose of paying the notes, when payable, the law implies a promise to pay it to the person entitled to receive it—to the plaintiff, if the rightful holder of the notes." —*Levishon v. Edwards*, 79 Ala. 293.

"Such an action (money had and received) is appropriate whenever the defendant has money in his possession which belongs of right to the plaintiff. * * * This right in the plaintiff to the money which bestows on him the right to maintain the action for it must arise in some form, where the law implies a promise on the part of defendant that he will pay it to the plaintiff, and the only privity between the parties that needs be shown arises from this promise, implied by law, that the defendant, having money in his hands that belongs, ex æquo et bono to the plaintiff, will pay it over to

him."—*Hudson v. Scott et al.,* 125 Ala. 172, 28 South. 91.

See, also, *Potts & Potts v. First Natl. Bank,* 102 Ala. 286, 14 South. 663; *Burton Lumber Co. v. Wilder,* 108 Ala. 669; 18 South. 552; *Huskabee v. May,* 14 Ala. 263, 27 Cyc. 849.

(4, 5) These are no new principles, but are familiar and quoted merely for convenience in giving them application here. The facts of this case show that defendant had authorized Shafer to inspect the logs and draw the draft for the balance in cash which was due to Lee. This he had previously done, and the draft had been handled by this plaintiff and paid by defendant. Shafer, the duly authorized agent of defendant, drew the draft in this case payable to Lee, and delivered the same to Lee with a knowledge that Lee was going to discount the same with plaintiff bank to secure the money to pay off the laborers, and Lee, in his presence, forwarded the same to the bank for this purpose. Under such circumstances, knowledge to Shafer, the authorized agent acting within the line and scope of his employment, was knowledge to defendant. The defendant receives and accepts the logs contained in the bills of lading attached to the drafts and sells them, or otherwise disposes of them. Defendant, with full knowledge of the facts, has armed Lee with the draft by which he acquired the purchase money due him on those logs from an innocent third party, and we are clear in the opinion that this defendant cannot now be heard to say, under such circumstances as here disclosed, that Lee has, in the meanwhile, become indebted to it in excess of the draft by reason of the fact that his note has matured by demand for payment made. Clearly, so far as this plaintiff is concerned, defendant must be held to have impliedly waived the right to set

off such demand, and, having also accepted the logs called for in the bill of lading under the circumstances here disclosed, we are also of opinion defendant cannot now complain that all those logs specifically numbered, as indicated by the numbers on the draft above mentioned, were not embraced in the bills of lading, while for those not so numbered were substituted other logs of equal dimensions and of like and equal quality. The original agreement between the parties was that Lee should be paid the difference of the purchase money. For this purpose the defendant, by its authorized agent, gives the draft for this portion of the purchase price, and with knowledge of defendant, Lee indorses this draft to plaintiff bank and delivers bills of lading for the great portion of the logs bearing the identical numbers on the draft and substituted logs of equal size and quality for the others which are received and accepted by the defendant. By the indorsement of the draft and delivery of the bills of lading to plaintiff bank, Lee has transferred to plaintiff his right to such purchase money. Defendant has sold or otherwise disposed of the logs, the right of the purchase price of which Lee has thus assigned to plaintiff. The action of money had and received is an equitable action, governed by equitable principles.

(6) It is one of the familiar maxims of the law that, where one of two innocent persons must suffer by the acts of a third person, he who has enabled such third person to occasion the loss must sustain it. There is an old quotation found among the legal maxims, "What is just and right is the law or laws," and while, because of necessary regard for conformity to fixed rules and principles, it may, unfortunately perhaps, be doubted that this can be said to have universal application,

yet it at least points the way to an ethical goal and can find suitable application in the case at bar.

(7) Under the facts as herein disclosed, we are of the opinion that the defendant has money in its hands which in equity and good conscience belongs to the plaintiff. It has received the consideration for the portion of the purchase money represented by the draft acquired by plaintiff with knowledge of defendant, and, in an action for money had and received where equitable principles are given influence and effect, no mere legal niceties should be permitted to defeat ends of common justice and fair play and prevent a recovery. Under such a count, we are not so much concerned as to whether or not plaintiff acquired legal title to the logs by the bills of lading not indorsed to the plaintiff, nor the fact that by defendant's mortgage and a maturity of the note it had a legal title thereto and a right to the possession thereof, but to whether or not under the facts as disclosed by this record the defendant has in its hand money which in equity and good conscience belongs to the plaintiff.

We are therefore persuaded that, under the facts of this case, plaintiff was entitled to a judgment upon the count for money had and received. The principle herein announced was given full application in the case of *Potts v. First Nat. Bank, supra,* and we are of the opinion that a careful reading of the facts of that case will disclose that the decision fully supports the conclusion we have here reached.

By what is here said we do not mean to indicate that no recovery could be had upon count 3, which sets up the facts in reference to the draft, and also the common count as upon an open account which by reference therein to the bill of exchange shows that plaintiff was assignee thereof.

As we are clear in the opinion that the action is sustained by the count for money had and received, it becomes unnecessary to state any conclusion as to the other counts or to pass upon any question of pleading. The cause was tried by the court without a jury. We conclude that plaintiff, under the evidence shown by this record, is entitled to a recovery upon the common count for money had and received. We see no occasion to remand the cause upon the reversal thereof, but judgment will be here rendered.—Sections 2890, 5359, 5361, Code 1907.

The judgment of the court below is, accordingly, reversed, and one here rendered against the appellee in favor of the appellant upon the common count as herein indicated for the full amount sued for, to wit, $1,-319.72, with interest thereon from July 10, 1913.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.