(100 South. 236)

TUSCALOOSA LUMBER CO. v. TROPICAL PAINT & OIL CO.  (6 Div. 912.)

(Supreme Court of Alabama. April 10, 1924. Rehearing Denied May 15, 1924.)

1. Sales ⬤⟹22(3)—Buyer repudiating contract, but receiving, using, or selling goods, liable in assumpsit.

Buyer repudiating contract, but receiving, using, or selling goods, is liable in assumpsit, in absence of novation or payment; privity of contract, other than that arising from implied promise to pay, being unnecessary.

2. Novation ⬤⟹7—Required proof stated.

As novation is never presumed and extinguishment of original debt must appear, proof that creditor, original debtor, and promisor intended to accept, and that creditor agreed to, new promise in discharge of original debt, is required.

3. Novation ⬤⟹12—Payment ⬤⟹65(6)—Burden of proof on party asserting novation or payment.

One asserting novation or payment has burden of proving that such was fact and parties' intention.

4. Novation ⬤⟹12—Declarations and acts inconsistent with intent to hold original debtor and evidence of agreement to release him essential.

In absence of express contract of novation, creditor's declarations and acts must be inconsistent with intention to hold original debtor, and evidence must clearly show or be tantamount to agreement to release latter from liability.

5. Novation ⬤⟹13—Creditor's acceptance of promisor's notes in discharge of debtor's liability fact issue if testimony conflicting.

Whether creditor accepted notes of third party in discharge of debtor's liability is issue of fact for judge trying case without jury, if testimony is conflicting.

6. Accord and satisfaction ⬤⟹1—Novation ⬤⟹1—Payment ⬤⟹18—Creditor's acceptance of notes from third party held not accord or satisfaction, payment, or novation.

Mere acceptance of notes from company not regarded by payee as worthy of credit at time of shipments and receipt of goods sold to another company, whose agreement with maker to receive materials and credit purchase price on its account with maker were unknown to payee, did not amount to accord and satisfaction, payment, or novation of original debt.

7. Bankruptcy ⬤⟹363—Proof and filing of claim against bankrupt estate and acceptance of dividend held not novation or payment as to original debtor.

Proof and filing of claim against bankrupt estate of company executing notes to claimant for purchase price of goods sold and delivered to another company and acceptance of small dividend *held* not novation or payment of original debt.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action on the common counts by the Tropical Paint & Oil Company against the Tuscaloosa Lumber Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The order for the goods in controversy is as follows:

"The Tropical Paint & Oil Co., Cleveland, Ohio, U. S. A.
"Order No. 8    Date, Feb. 3, 1920.
"Name: Tuscaloosa Lumber Co. Business: Street, Tuscaloosa, Ala. P. O. address, Tuscaloosa; State, Ala. R. R. Town, Tuscaloosa; State, Ala.  Terms 30 da. net.  County.
"If shipment is to go to a point other than purchaser's address shown above, use following lines: Ship to ———. R. R. town, ———. State ———. Route: ——— Ship about: At once.
"This order is placed with the understanding that it is positive and not subject to change or countermand unless so specified hereon. Any agreement not stated on this order will not be recognized.
"All accounts payable at the office of the Tropical Paint & Oil Co., Cleveland, Ohio.

| | Package | Be careful in specifying size of package | | |
|---|---|---|---|---|
| | | | Color | Price |
| 200 | Rolls | 1 Ply Elastikite | .06 | 1.60 |
| 200 | Rolls | 2 Ply Elastikite | .09 | 2.00 |
| 100 | Rolls | 3 Ply Elastikite | .12 | 2.40 |
| 50 | Sqrs. | Individual Shingles | | 7.75 |

"Please send full line of samples of roofing and samples for display. F. o. b. Chicago. All sales are f. o. b. Cleveland, Ohio.
"Signature of Purchaser:
"Geo. W. Phalin Lbr. Co.
"Salesman: R. J. Doyle."

Brown & Ward, of Tuscaloosa, for appellant.

A debt once extinguished by a novation cannot be revived except by consent of the

─────────
⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

parties. 29 Cyc. 1138; Jolley v. Walker, 26 Ala. 690. A note with a waiver of exemptions, given for a debt, raises a presumption of payment, as is a higher form of security than an open account. Lee v. Green, 83 Ala. 491, 3 South. 785.

Foster, Verner & Rice, of Tuscaloosa, for appellee.

Acceptance of the goods under circumstances from which consignee knew payment was expected is an assent to the offer implied in sending the goods, and renders consignee liable on account for the goods involved. Burton Lbr. Co. v. Wilder, 108 Ala. 669, 18 South. 552; Turnipseed v. Burton, 4 Ala. App. 612, 58 South. 959; 1 Williston on Contr. § 91. If appellant repudiated the contract, but nevertheless received and sold the goods, it is liable to appellee for money had and received. Levinshon v. Edwards, 79 Ala. 293; Farmers' B. & T. Co. v. Shut & Keihn, 192 Ala. 53, 68 South. 363. The giving to appellee by Phalin of his notes for the account did not constitute payment or novation of the original debt against appellant. Fickling v. Brewer, 38 Ala. 685; McWilliams v. Phillips, 71 Ala. 80; Montgomery B. & T. Co. v. Jackson, 190 Ala. 411, 67 South. 235; Wallace v. Myrick, 1 Ala. App. 572, 55 South. 259; Armstrong v. Walker, 200 Ala. 364, 76 South. 280; Hopkins v. Jordan, 201 Ala. 184, 77 South. 710; Barnes v. Heckla F. I. Co., 56 Minn. 38, 57 N. W. 315, 45 Am. St. Rep. 438. The filing of Phalin's notes in the bankrupt court and receiving a dividend thereon does not show a novation; it was appellee's duty to realize on the notes if practicable. May v. Sharp, 49 Ala. 140; Russell v. Hester, 10 Ala. 536; Powell v. Henry, 27 Ala. 612; Anderson v. Timberlake, 114 Ala. 377, 22 South. 431, 62 Am. St. Rep. 105; Buck v. Gimon, 201 Ala. 619, 79 South. 51; McDonnell v. Ala. Ins. Co., 85 Ala. 414, 5 South. 120; Butterfield v. Hartshorn, 7 N. H. 345, 26 Am. Dec. 741.

THOMAS, J. The action is in assumpsit. Defendant pleaded in short by consent—the general issue, payment, accord, satisfaction, novation. The trial, had before the court without a jury and on documentary evidence and testimony given ore tenus resulted in judgment for the plaintiff. Motion to have the judgment set aside and a new trial granted was overruled.

[1] If the defendant repudiated the contract of sale yet it received, used, or sold the goods of the invoice price and unless there was a novation or payment of the debt, it is liable therefor in assumpsit. Privity of contract is not necessary to support such action—only that arising from an implied promise to pay—that arises under the law of such case, in an action equitable in character. The good morals are the reason for such liability and its enforcement. Farmers' Bank & Trust

Co. v. Shut & Keihn, 192 Ala. 53, 68 South. 363; Heide v. Capital Sec. Co., 200 Ala. 397, 76 South. 313; Dorsey v. Peppers, 202 Ala. 321, 80 South. 403; Owensboro Wagon Co. v. Benton Mercantile Co., 204 Ala. 415, 85 South. 723; First Nat. Bank of Dozier v. Farmers' Bank of Luverne, 207 Ala. 402, 92 South. 639; Allen v. M. Mendelsohn & Son, 207 Ala. 527, 93 South. 416. The order was dated February 3, 1920, and immediately thereafter (February 10, 1920) plaintiff wrote defendant confirming the arrangement made by its salesmen giving defendant the right to sell its products indicated within the counties of Tuscaloosa and Pickens, and concluded as follows:

"It is understood that this arrangement will remain in force for a minimum of six months and as much longer after that as may be mutually profitable and agreeable. We thank you for the carload order you have placed with us through Mr. Doyle, shipment of which we will promptly make, and look forward with pleasure to our relations with you."

This "carload order" went forward in broken shipments from two initial points, being received by defendant on the respective dates of May 9, 1920, and June 30, 1920, unloaded in its yards, and sold. On May 14, 1920, plaintiff wrote, as to payment of the first shipment, to Tuscaloosa Lumber Company:

"You have apparently overlooked statement sent you covering your account of $960.00.
"Prompt payment by customers eliminates the expense of carrying long overdue accounts and enables us to furnish the very best material at the lowest possible prices.
"Will you kindly assist us in thus serving the trade in the best possible manner by sending remittance promptly."

Plaintiff again wrote on June 4, 1920:

"We find you have not responded to our recent request for payment of your account amounting to $960.00.
"As this amount is now 30 days overdue, we would appreciate remittance or definite advice by return mail."

On June 25, 1920, defendant replied as follows:

"In reply beg to say that while the car of roofing was invoiced to us and shipped direct to us, we understood that the G. W. Phalin Lumber Co. would pay for this charging it to us and we are now taking the matter up with them.
"We certainly had no hand in the matter of ordering this material and are satisfied they will give it their attention."

This evidence tended to show some arrangement between the G. W. Phalin Lumber Company and the defendant not known to or participated in by the plaintiff. This statement by the Tuscaloosa Lumber Company was after receipt and sale of the first shipment, and after the second shipment had gone forward, completing the shipment of the "carload order" mentioned in plaintiff's letter of

February 10, 1920. It is uncontroverted that, notwithstanding the manner of signature to the order, and the correspondence we have adverted to, defendant received and sold both shipments of material and made claim for excess freight charges by reason of circuitous routings.

We should indicate that on June 25, 1920, defendant wrote G. W. Phalin Lumber Company as follows:

"We inclose herewith a letter just received from the Tropical Paint & Oil Company and a copy of our reply to them. As we understood the matter, you were to pay for this roofing and we are crediting your account for the same.

"We inclose herewith credit memorandum showing that it was short four rolls of the two ply roofing, $8.00, and you should deduct this in remitting. There should also be an adjustment in freight as this was not a carload."

On July 10, 1920, plaintiff replied to defendant's letter of June 25, 1920, as follows:

"You wrote us on June 25th that you thought the G. W. Phalin Lumber Company was to pay for the shipment of roofing materials which we sent you some time ago invoiced at $960.00. Have you taken the matter up with them and what do they say in regard to payment?"

Defendant replied to this last-quoted letter on July 14, 1920, as follows:

"* * *' In reply beg to state that at the time we wrote you on June 25th we sent the Geo. W. Phalin Lumber Company a copy of our letter to you, and also wrote them calling their attention to the fact that they had charged us with this material and that they were to pay for the same, and they stated that they would give it prompt attention. We will call their attention again to the payment of this account, and it would be well for you to write them also."

On August 17, 1920, the plaintiff again urged the defendant as follows:

"Are we to understand that the invoice for roofing which matured on July 30th is to be handled the same as the $960.00 item, namely, through the Phalin Lumber Company, would say here that we have not had any remittance from the Phalin people as yet on the large item and it might be a good idea for you to take the matter up with them yourselves and get them to rush the check through, and if this $387.50 item is to be taken care of by them also, kindly call that to their attention."

There was no immediate reply from defendant as to this letter. However, defendant offered in evidence a correspondence between plaintiff and Phalin & Co. showing, among other things, that on July 23, 1920, the latter company wrote plaintiff that it inclosed—

"a letter from the Tuscaloosa Lumber Company showing that their [there] were 2 rolls of roofing short on your shipment in Penn. No. 500418. You will note the Tuscaloosa Lumber Company reports receiving the roofing in car A., T. & S. F. No. 9183, and the trans-

fer may account for this shortage. We inclose our 90-day acceptance for the $952, and will thank you to pass same for our credit. We also inclose the paid expense bill and shall let you know the amount of freight on the roofing which arrived yesterday so that you can figure up same and see if we are not entitled to a refund. You will note we are charged with a minimum freight of 30,000 pounds, we would have been charged considerably less on these two shipments had they come out in one shipment as ordered by us.

"Due to our inability to get equipment to move our lumber and the dreadful decline in price, we are obliged to send an acceptance at this time which shall be honored when due. Shall mail a check for the last shipment as soon as it is delivered to the Tuscaloosa Lumber Company and checked up, the shipment has just arrived over the L. & N."

Plaintiff, on July 28, 1920, acknowledged this letter as follows:

"In reply to your letter of July 23d, concerning the shipment made by us to the Tuscaloosa and we are willing to accept your trade acceptance on 90 days' time.

"We also note what you say in regard to the shortage of four rolls of the two-ply roofing. We note, however, that the expense bill which you sent us does not show this shortage and we would ask that you kindly have this attended to by the freight agent and return it to us, so we can file claim. We will then also have a check made as to the freight charges and if there is a refund coming to you, you can rest assured it will be taken care of."

The record shows a letter from plaintiff to Phalin Lumber Company, dated July 3, 1920, as follows:

"Your favor of the 29th inst., at hand, and we note you are inclosing note because just at this time you are unable to take care of it, having run short of ready cash.

"We have filed your note away and given you credit for it and same will be sent to your bank upon maturity date which will be Aug. 28th."

The Phalin Lumber Company wrote plaintiff, the letter being dated "9—21—1920," as follows:

"We have yours of the 17th and note same. Will take care of our obligations just as soon as we possibly can. The first note given you is past due here at our bank and we will take it up next Monday; had a bad break at our planer which has held us up for two weeks and with the bad conditions in the lumber market is [it] has made us hard up. Just as soon as we commence moving stock from our planer here we will take care of our bill."

The letter of plaintiff to Phalin Lumber Company, dated September 17, 1920, and referred to in the last quoted letter, follows:

"Can't you now arrange to let us have remittance covering the two shipments of fabric roofing to the Tuscaloosa Lumber Company? You sent us a freight acceptance for $952.00 due Sept. 22d on one shipment but the last shipment of $387.50 covering fifty squares of

individual green shingles has not been attended to, although it is past due since July 30th.

"Won't you kindly arrange to take care of that item within the next few days."

The Phalin Lumber Company wrote' plain--tiff, the letter being dated "10—21—1920," as follows:

"We are obliged to return our note given you which came due yesterday. Business has gotten in such shape that we are unable to sell any stock and we must ask for more time on our paper. We will pay same but cannot give you any definite time when our obligations will be met. Are in hopes that business will pick up after election and if it does we will be able to send you some money to apply on our past due paper."

Again, on November 19, 1920, plaintiff urged the Phalin Lumber Company as follows: )

"Your favor of recent date in regard to your account and that of the Tuscaloosa Lumber Company received, and we note that you had a thorough understanding with our Mr. Doyle in regard to conditions and under the circumstances we are willing to co-operate with you to the extent of our ability, and take note to mature May or June 1st for the total amount of your indebtedness.

"The three invoices, one charged to the Geo. W. Phalin Lumber Company and two to the Tuscaloosa Lumber Company, amount in all to $1,501.80, so we would appreciate it very much if you would send us your note for that amount by return mail same to mature if possible on May the 1st.

"Thanking you for your attention, and trusting this will enable you to take care of matters without any financial inconvenience or embarrassment, we are."

The Phalin Lumber Company, by letter dated November 23, 1920, replied to the foregoing letter, as follows:

"We have your letter of the 19th in regard to our account with you, and wish to thank you very much for giving us this additional time. We are inclosing our note for $501.80 due May 1, 1921, and one for $1,000.00 due June 1, 1921, which we are sure we will be able to take up by that time."

Plaintiff's reply to the last-quoted letter was dated November 29, 1920, and follows:

"This letter it [is] to acknowledge the two notes which you recently sent us, the one for $1,000 and the other for $501.80 covering not only your account but also that of the Tuscaloosa Lumber Company.

"We have given you proper credit and are inclosing therewith the original note for $154.-30 which you sent us properly canceled.

"Thanking you for your attention and trusting that you can take care of the new notes when they mature without any inconvenience or embarrassment, we are."

The record further shows the nonpayment and protest of these notes, the bankruptcy of the maker thereof, the G. W. Phalin Lumber Company, the proof of claim, allowance, and payment thereon of a small dividend ($150) by the trustee in bankruptcy of the Geo. W. Phalin Lumber Company.

The question recurs: Did the giving to plaintiff by the Phalin Lumber Company of its notes constitute payment or novation of the original debt against defendant?

[2, 3] The essential characteristics of a novation were dealt with in Hopkins v. Jordan, 201 Ala. 184, 77 South. 710. There was proof required that the creditor, the original debtor, and the promisor intended to accept the new promise in discharge of the original debt—that the creditor, in accordance with this intention, agreed to the new promise in discharge of the original debt. This follows from the settled rule that novation is never to be presumed, and that it must appear that the original debt has been extinguished. Armstrong v. Walker, 200 Ala. 364. 76 South. 280; Wallace v. Myrick, 1 Ala. App. 572, 55 South. 259; Mills v. McMillan, 78 Fla. 294, 82 South. 812; Montgomery B. & T. Co. v. Jackson, 190 Ala. 411, 67 South. 235; McWilliams v. Phillips, 71 Ala. 80; 29 Cyc. 1123, 1130, 1131; McDonnell v. Ala. Ins. Co., 85 Ala. 401, 5 South. 120. He who asserts novation or payment has the burden of proving that this was the fact and intention of the parties. McWilliams v. Phillips, 71 Ala. 80.

In Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 41, 57 N. W. 314, 315, 45 Am. St. Rep. 438, 440, it is said:

"It is frequently the case that the creditor consents to the arrangement as a favor or for the convenience of his debtor; and we apprehend it would be a surprise to the parties, as well as an injustice, in many cases, if it were held to operate as a release of the original liability; and therefore it should distinctly appear, from the express terms of the agreement, or as a necessary inference from the situation of the parties, and the special circumstances of the case, that such was the intention and understanding of the parties, of which the creditor was chargeable with notice, and this is the generally accepted doctrine of the courts. 11 Am. & Eng. Ency. of Law, 889, 890."

[4, 5] When there is no express contract of novation, the declarations and acts of the creditor must be inconsistent with an intention to hold the original debtor. The evidence must clearly show or be tantamount to an agreement to release the original debtor of liability. If the testimony is in conflict as to whether the plaintiff had accepted the notes of the Phalin Lumber Company in discharge of defendant's liability, that was an issue of fact for the judge trying the case without a jury.

[6] The mere taking of the notes was not sufficient for payment, extinguishment, or novation as to the original debt; without more, the presumption of the law is that the same were taken conditionally, on payment only. McWilliams v. Phillips, 71 Ala. 80. The evidence tended to show the Lumber

Company, the defendant, was worthy of credit given, and that the Phalin Lumber Company was not so regarded by plaintiff before and at the time the sale was consummated by the shipments and receipt of same by the defendant. The financial condition and business association of the Tuscaloosa Lumber Company and the Phalin Lumber Company were known to the debtor, yet the indebtedness of the Phalin Lumber Company to the defendant company, and the terms of an agreement or understanding between the two latter companies by which the defendant is said to have received the materials purchased from plaintiff, and to have given the Phalin Lumber Company a credit on their account for the purchase price thereof, were facts unknown to plaintiff when the goods were delivered to and received by defendant. In other words, the defense, for all practicable purposes, is to carry out, at the expense of the plaintiff, the agreement between defendant and the Phalin Lumber Company for the discharge of the latter's debt to the former, and it is a conceded fact that the plaintiff was not a party to such arrangement between defendant and the Phalin Lumber Company. The testimony of plaintiff, and its correspondence, rebuts such agreement on its part, and the mere acceptance of the notes did not amount to accord and satisfaction, payment, or novation of the original debt of the defendant to the plaintiff.

[7] Did the proof and filing of the claim against the bankrupt estate of Phalin Lumber Company, and acceptance by plaintiff of a small dividend, have the effect of a novation or payment of debt as to the defendant? We think not. There was no election of inconsistent rights or remedies, or estoppel by suit, that would defeat plaintiff's judgment. Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420.[1] Its failure to prove the claim against the bankrupt estate of the Phalin Lumber Company would have rendered plaintiff liable for the failure of due diligence to the original debtor for any dividends that might have been received in reduction of the original debt. There is analogy to be found in Buck v. Gimon, 201 Ala. 619, 621, 79 South. 51; Anderson v. Timberlake, 114 Ala. 377, 389, 22 South. 431, 62 Am. St. Rep. 105; McWilliams v. Phillips, 71 Ala. 80, 83; May v. Sharp, 49 Ala. 140, 142; Powell's 'Adm'r v. Henry, 27 Ala. 612, 615, and Russell v. Hester, 10 Ala. 535.

The record failing to show that the plaintiff creditor agreed to accept the Phalin Lumber Company's notes in satisfaction and discharge of the pre-existing original debt of defendant to plaintiff, the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.