(137 So. 297)

**SOUTHERN SURETY CO. v. MOBILE NAT. BANK.**

1 Div. 659.

Supreme Court of Alabama.

Oct. 15, 1931.

Harry T. Smith & Caffey, of Mobile, for appellee.

Lyons, Chamberlain & Courtney, of Mobile, for appellant.

THOMAS, J.

The suit was by the assignor of a claim and upon the bond of a contractor of highway construction.

The equitable nature of such a suit by the assignor of contractors and those who furnished labor and material for road construction on state contracts was the subject of decision in United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622; United States F. & G. Co. v. Andalusia Mfg. Co., 222 Ala. 637, 134 So. 18; Sherrill Oil Co. v. Taylor (Ala. Sup.) 137 So. 295;[1] Sherrill Oil Co. v. Taylor (Ala. Sup.) 137 So. 296.[2] So, also, claims of interveners for work and labor done and material furnished in such construction, and duly assigned, were likewise considered and sustained in the foregoing cases.

A general statement of the case under the pleading is as follows:

Ziliak-Schafer Milling Company filed the original suit against appellant, Southern Surety Company, as surety on the bond of Gillis Construction Company, the original contractor, for the construction of Project No. 6 in said county; the appellee Mobile National Bank intervened in said suit and propounded its claim against said surety, for $3,252.55, under an assignment from one Malone, a subcontractor, of the amount due him as such subcontractor for labor, materials, supplies, etc., furnished by him as such subcontractor in the construction of said Project No. 6.

No plea of payment, or of discharge by novation or accord and satisfaction, was filed by appellant. The court thus stated the issues and findings of fact in the judgment entry: "This cause coming on to be heard on June 18th, 1930, on the original complaint and the several intervening claims as shown by the record, all the parties in open Court waived trial by jury and consented to the trial by the undersigned Judge. The Court thereupon proceeded to hear the cause on the testimony taken in open court, and at the conclusion thereof took the same under consideration, and after a careful consideration of all the testimony, it is now considered, ordered, adjudged and decreed by the Court that the Southern Surety Company, defendant in this cause, became surety on the bond of Gillis Construction Company, given to the County of Mobile to guarantee the faithful performance of the contract between the County and the Gillis Construction Company for the grading and drainage work in and about the construction of the public highway in Mobile County between Theodore and Fowl River, and sometimes called the Delchamps Road, being County Improvement No. 6, and that the penal sum of the said bond is greater than the total of all claims filed in this cause against the Defendant; and that the Plaintiff and the Claimants in whose favor judgments are hereinafter awarded supplied labor, material, feedstuffs, or supplies in the execution of the work provided for in such contract,

and that Plaintiff and the said Claimants, respectively, are entitled to recover of the Southern Surety Company, defendant in this cause, the amounts respectively hereinafter set opposite their respective names, being the balances due them, respectively, for the labor, material, feedstuffs and supplies so furnished, viz.:"

Then followed the specific amounts due each of the parties named, including the Mobile National Bank, or assignee of L. W. Malone, $2,381.90.

The evidence shows without dispute that Malone originally subcontracted (under Gillis Construction Company) a portion of the construction of that project; that he had completed about 65 per cent. of the work required to be done under his subcontract, when the original contractors became involved and were unable to pay him for his work as they had agreed to do. At this time Malone owed the Mobile National Bank $1,200, which he had borrowed from that bank to finance his operations under said subcontract. The original contractors then owed Malone, the subcontractor, $1,314.85, which they were unable to pay him. Under these conditions the original contractors and the subcontractor went to the president of the Mobile National Bank with a plan for financing the completion of the entire uncompleted portion of the contract for that road construction; it was agreed to borrow from the bank, $3,500 on the note of Gillis Construction Company, the original contractor, indorsed by Malone, the subcontractor, and secured by a mortgage on Malone's construction equipment. At the time Gillis Construction Company owed the Merchants' Bank $810.12, which was secured by an assignment of Gillis Construction Company's estimates on that construction project. Malone did not owe any part of this $810.12, and was not concerned with its payment except as a step in the plan indicated and for refinancing the completion of the project. It was estimated that it would take $2,300 in addition to the $1,200 already due the Mobile National Bank to pay off the claim of the Merchants' Bank and to refinance the completion of the work. The Mobile National Bank then agreed to loan $3,500 on Gillis Construction Company's note, provided it was indorsed by Malone and secured by a mortgage on Malone's equipment, and the further agreement that Malone, as subcontractor, would complete the work (1) that remained to be done by said original contractors, as well as (2) the remainder of the work Malone had originally subcontracted. It was further agreed between these parties that $1,200 (of this $3,500 secured by the loan) should be used to take up Malone's past-due note to the bank; that $810.12 should be paid the Merchants' Bank in discharge of Gillis Construction Company's obligation to it, and to secure a release of Gillis Construc-

[1] Ante, p. 437.
[2] Ante, p. 438.

tion Company's assignment of estimates to the Merchants' Bank, and that the balance of the proceeds of the $3,500 be turned over to Malone, with which he was to finance and effectuate the completion of that road building project.

Pursuant to the agreement the $3,500 note was signed by Gillis Construction Company, indorsed by Malone, and in addition the latter executed a mortgage on his construction equipment to secure this note which he had so indorsed. The $3,500 thus secured was credited on the books of the Mobile National Bank, to Gillis Construction Company, and a check was drawn to the Merchants' Bank for $810.12 to pay Gillis Construction Company's debt to that Bank. On the same day, three checks were issued by Gillis Construction Company to Malone on the balance of the deposit so raised on the joint credit of Gillis Construction Company and Malone and on the security of their equipment, viz., one for $1,789.88, one for $500, and one for $400, totaling the entire balance of $2,689.88. Out of the moneys so placed in the hands of Malone, he gave his check to that bank to take up his $1,200 note. The balance of the money so borrowed by Gillis Construction Company on his indorsement and secured by his property (as we have stated) was to be used and was used in financing the completion of that construction project. That balance not being sufficient to that end, Malone borrowed $650 on his credit alone in order to complete the contract.

The Mobile National Bank was to receive and apply on this note for $3,500, all of the moneys earned under the contract and the subcontract (by Gillis Construction Company or by Malone), and it was contemplated that the earnings would be sufficient to pay the note. This was not the fact; the bank collected from the county only $676.67, leaving Gillis Construction Company and Malone owing it (on the note) the sum of $2,823.33 with interest, and Malone owing on his own account the $650 later borrowed and with interest accruing thereon.

It was undisputed by the evidence that Malone earned (as subcontractor for Gillis Construction Company on Project No. 6) the total of $4,265.89, and was paid $1,019.83, so that there was an admitted indebtedness to him as subcontractor for this project, for labor, material, and supplies furnished, the balance or difference of $3,246; unless the same was paid or discharged in whole or in part by virtue of the transaction above outlined. This is the question for decision.

In addition to the fact that under the law Malone remained liable to repay the moneys that came into his hands, including the $1,200 that was paid to the bank, there was the further obligation to repay $810.12 that was used to pay Gillis Construction Company's debt to the Merchants' Bank, and Malone had mortgaged his property to secure the repayment to the bank of the full sum of money borrowed. The testimony shows there was no arrangement, agreement, or intent to discharge the indebtedness of Gillis Construction Company to Malone for money already earned under the subcontract, nor for the money to be earned in the future under his subcontract as then modified; that Malone never credited Gillis Construction Company with any part of the money that came into his hands as a result of the loan because the loan was made on Malone's "indorsement" and the security of his property, and Gillis Construction Company was not "to be relieved or released from any of its obligations under this contract until this note for $3,500.00 was paid according to * * * agreement." The testimony of Malone and Taylor is positive as to the foregoing, as we shall later show. Gillis Construction Company did not controvert this fact; its surety company contends that the court, despite the evidence to the contrary, should have found that it was intended and agreed that the debt of Gillis Construction Company to Malone was discharged, though Malone remained liable to refund every cent he got and more, and had secured this liability by a mortgage of his property.

█ It is established law that, the original indebtedness being admitted, the burden was on the defendant surety company to allege and prove that it had been discharged by payment, novation, or accord and satisfaction. Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236; Morgan Paving Co. v. Carroll, 211 Ala. 121, 99 So. 640; McWilliams v. Phillips, 71 Ala. 80.

█ The defendant did not plead payment, novation, or accord and satisfaction, and had the evidence been sufficient to show either of these defenses, it would be unavailing, because, "Proof without allegation is as impotent as allegation without proof." Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 127, 69 So. 508, 510, L. R. A. 1916C, 767.

█ However, we may say, on the merits, that the evidence fails to show a discharge of the debt sued on (by payment, novation, or accord and satisfaction), or that such result was the intent of the parties—that said debt of Gillis Construction Company, the original contractor, be discharged. That is, the debtor, Gillis Construction Company, having borrowed the whole sum of money on its note indorsed by Malone, its creditor, the effect was that as if it had given its note to that creditor and discounted by the latter to the bank. Payment will not be presumed in such case and must be shown that such was the intention of the contracting parties. McWilliams v. Phillips, supra; Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., supra; Bankers' Trust Co. v. Gillespie Co. (C. C. A.) 181 F. 448. It is not to be reasonably inferred that such

creditor intended a discharge of the debt when the latter was liable on his indorsement and subject to be required to refund any money received by him under the temporary arrangement or refinance scheme, or that the subcontractor, in the absence of express evidence to that effect, intended to release the surety under the contractor's bond. Bankers' Trust Co. v. Gillespie Co., supra.

See, also, the case cited above. Morgan Paving Co. v. Carroll, 211 Ala. 121, 123, 99 So. 640. The question of intent (under the evidence heard by the court sitting without and as a jury) to discharge the original debt by payment, novation, or accord was a question of fact for the court.

We are of opinion that the finding for appellee was well founded in the undisputed evidence. The receipt and cashing of the three checks upon the fund raised by Gillis Construction Company's note (indorsed by Malone and secured by the property of Malone) did not operate as payment and discharge of Malone's credit and right by, under, and against the indebtedness to him of the Gillis Construction Company. Such is the result, for any sums of money received by Malone were not unconditional and did not relieve him of obligations assumed as indorser and guarantor for his said original contractor—Gillis Construction Company.

The effect of the evidence of Malone, among other things, is:

"It was understood and agreed that at that time that all of the money earned by me that had been earned by me or should be earned by me in future, should be paid to the Mobile National Bank and applied on this note. The arrangement also included the transfer to the bank of all of the earnings of Gillis Construction Company under this contract and it was to be applied as it came in monthly from the estimates. There was no agreement or understanding between me and Gillis Construction Company by which the Gillis Construction Company was to be relieved or released from any of their obligations under this contract until this note for $3500.00 was paid according to our agreement. It was to be paid out of the monthly estimates. No part of the three thousand two hundred and forty-six dollars and some odd cents that it is admitted that I had earned under this sub-contract had been paid there being no payment to me except the one thousand and eighteen or nineteen dollars. The note to the Mobile National Bank which I indorsed and which was secured by my property has not been paid and at the present time I remain obligated on that note. I completed all of the work that I sub-contracted and agreed to do for the Gillis Construction Company. * * *

"Yes, I paid $1200.00 of the proceeds of this check on the same day and that was a debt I already owed on the same project. I owed the bank $1200.00 at the time I got this check from the Gillis Construction Company and I paid that amount on the same day. I did not give Gillis Construction Company credit on my accounts for that check. They gave me that amount of the money out of the money we borrowed jointly. I did state that Gillis Construction Company executed the note for $3500.00 and that I endorsed that note and I suppose that note was credited on Gillis Construction Company's account at the bank and they drew this check along with these others out of that account and paid it to me and I have not credited them anything for this amount in my statement presented here because the loan was made on my endorsement. I received the check and on the same day they gave me another check for $500.00 payable to my order which I had certified and which bears my endorsement and on which I obtained the money. I did not credit them with the amount of that check or with the proceeds of that check because I endorsed for the money. On the same day that they gave me a check for $400.00 payable to my order, which bears my endorsement and which was certified, I got the $400.00 on the check. No sir, that was not a payment by Gillis Construction Company to me. It was money I had helped them to borrow. They paid me that much of the proceeds of that money which was jointly loaned, by that I mean that I endorsed the note. I have not in my accounts credited Gillis Construction Company with either of these checks or the proceeds of either of these three checks."

The evidence of Mr. Taylor was to the effect: "I was present at the negotiations or discussions between Mr. Malone and the Gillis Construction Company leading up to this loan or advance of $3500.00. There was not any agreement, or understanding or discussion by which the Gillis Construction Company was to be released or discharged from any obligation or debt which they owed Malone under the sub-contract or that might become due in the future. As a matter of fact, it was just to the contrary. He looked on it simply as a renewal of that $1200.00. The note was past due and it was handled that same day and that was one reason we went in that, namely, to get our note renewed. There was no agreement then by which Gillis Construction Company was to be discharged or released from any debt which it owed Malone or subsequently contracted to Malone, under this sub-contract. It was simply a book entry to get rid of that note and it was all done on that same day. In regard to the whole transaction there was no understanding or agreement between the parties to the effect that Gillis Construction Company's debt to Malone would be discharged in any way by that transaction. It was specifically understood that all of these checks were to be used in pay rolls to complete

the job. The $800.00 was to be paid the Merchants Bank so that we could get an assignment on George Stone so the money would be collected. That was the only assignment on record at that time. That $1200.00 in there, we simply renewed the note already due and unpaid. There was no understanding about paying the Merchants National Bank's claim, any money out of the proceeds of this loan. As a matter of fact, the only reason that was paid was because Mr. Stone said that there was a valid assignment of the amount and he would not release it without the Merchants Bank's permission and we found out from the Merchants Bank that was what they owed them and we paid it. This was paid with the knowledge and consent of Gillis Construction Company. I think they actually paid it themselves."

In McWilliams v. Phillips, 71 Ala. 80, 82, it is declared: "It is unquestioned that bills or notes, or engagements of any kind, whether of the debtor himself, or of a third person, will not operate as payment or satisfaction of an antecedent debt, unless it is shown that they were given and received as absolute payment. Payment of a debt is an affirmative plea and an affirmative fact, which must always be proved by the party averring it, and whoever claims that a debt, the prior existence of which is admitted or proved, has been extinguished by the substitution of another security, whether it be of higher or of the same dignity as the debt, assumes the burden of proving that the substituted security was taken and accepted in extinguishment. The extinguishment arises from the agreement of the parties, not from the nature or character of the security, that may form the consideration of the agreement, but there is no implication of law that it shall operate as a payment—no implication that one cause of action is substituted for another. The presumption of law is, that all such securities are taken as conditional, not as absolute payment of a pre-existing debt. 2 Am. Lead. Cas. 264, et seq.; Fickling v. Brewer, 38 Ala. 685."

Under the rules of law obtaining, as we have indicated the trial court properly found that it was not the intent of the parties, express or implied, as payment, release, or discharge by novation of the Gillis Construction Company or its sureties. See Robinson Co. v. Anniston Land Co., 217 Ala. 648, 117 So. 29; Hopkins v. Jordan, 201 Ala. 184, 77 So. 710; Tuscaloosa L. Co. v. Tropical P. & O. Co., supra; Morgan Paving Co. v. Carroll, 211 Ala. 121, 99 So. 640; Luckenbach v. McCahan Sugar Co., 248 U. S. 139, 149, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522.

In this judgment there is no danger of double pay by the surety company, as aptly indicated by appellee's counsel: Gillis owes the bank $3,500; both Gillis and Malone have agreed that all of the earnings under the contract for project No. 6 should be received by the bank and applied on this note. "To this end, both Malone and Gillis have assigned all of their earnings under the contract, and whatever is collected from the Surety Company under the Malone assignment necessarily applies (or is subject to application) on this note, so that whatever amount the Surety Company pays the bank Gillis necessarily gets credit for on his note, and neither Malone nor his assignee can compel Gillis to pay it again." Gillis, not having paid it in the first instance, remains liable to his surety to refund the amount it pays, but it neither increases his indebtedness nor subjects him to liability to double payment as suggested by appellant's counsel.

As to the $1,200 item, it is said in brief that Gillis "will be required to pay this $1,200.00 twice, once to Malone to enable him to pay his loan to the Bank, and secondly to his Surety, if this Surety is obligated to pay Malone the full amount of this account without a credit of this $1,200.00." The answer to this assertion is that where the surety company pays the amount that is due by Gillis under the assignment, the amount so paid must be credited on the note which Malone has indorsed, and to that extent exonerates Malone from paying any part thereof to the bank. The note indorsed by Malone to secure the loan from the bank having been paid to this extent, it will be "improper that Malone should again be paid by Gillis so as to enable him to pay his loan to the Bank." His loan to the bank having already been paid to the extent that the surety pays the bank in this suit, then Gillis thereafter is liable only for the balance due the bank on its note, and is liable to the surety company to refund to it the amount it has paid on the note. The sum of the two indebtednesses is the $3,500 which Gillis borrowed. We think this is the proper result and avoids double payment.

The judgment of the circuit court for appellee, Mobile National Bank, as assignor of L. W. Malone, for $2,381.90 with interest and damages, is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.